UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DAVID LeCLAIR, Sr.,

Plaintiff,

v.

MASSACHUSETTS BAY
TRANSPORTATION AUTHORITY,

Defendant.

Civil Action No. 17-cv-11111-FDS

**Oral Argument Requested**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
MASSACHUSETTS BAY TRANSPORTATION AUTHORITY'S
MOTION TO DISMISS THE COMPLAINT**

GOODWIN PROCTER LLP
Sarah K. Frederick (BBO# 679885)
100 Northern Avenue
Boston, Massachusetts 02210
Tel.:  617.570.1000
Fax:  617.523.1231
sfrederick@goodwinlaw.com

Andrew Kim
(*pro hac vice* application pending)
901 New York Avenue, N.W.
Washington, DC 20001
Tel.:  202.346.4000
Fax:  202.346.4444
andrewkim@goodwinlaw.com

*Attorneys for Defendant
Massachusetts Bay Transportation Authority*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

STATEMENT OF FACTS ....................................................................................................2

ARGUMENT.........................................................................................................................3

I.      Standard of Review...................................................................................................3

II.     Mr. LeClair's Complaint does not state a basis for relief under the ADA. ......................4

      A.     Mr. LeClair is not entitled to injunctive relief under the ADA. ...........................4

           1.    Mr. LeClair's ADA claim for injunctive relief is barred by res judicata and release. ...................................................................................4

      B.     Mr. LeClair is not entitled to money damages under the ADA. ...........................10

           1.    Mr. LeClair's failure to allege intentional discrimination in the form of discriminatory animus bars him from obtaining money damages.........10

           2.    Because Mr. LeClair's claim is premised solely on an allegation of personal injury, money damages are not available under the ADA. .........11

      C.     Mr. LeClair's ADA claim fails to identify an ADA violation.............................13

           1.    The Complaint does not identify how the MBTA violated the comprehensive regulatory framework covering the design of facilities...............................................................................................13

           2.    The Complaint does not allege sufficient facts to show deliberate indifference. ...............................................................................................14

III.    Sovereign immunity bars Mr. LeClair's state-law negligence claim. ...............................16

CONCLUSION.....................................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aponik v. Verizon Pa. Inc.*,
106 F. Supp. 3d 619 (E.D. Pa. 2015) ...................................................................................11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................................................................4

*Barnett v. City of Lynn*,
745 N.E.2d 344 (Mass. 2001) .........................................................................................17, 18

*Bertinetti v. Joy Mining Mach.*,
231 F. Supp. 2d 828 (S.D. Ill. 2002)....................................................................................11

*Blunt v. Lower Merion Sch. Dist.*,
767 F.3d 247 (3d Cir. 2014)..............................................................................................8, 9

*Brum v. Dartmouth*,
704 N.E.2d 1147 (Mass. 1999) ............................................................................................18

*Buchanan v. Maine*,
469 F.3d 158 (1st Cir. 2006).................................................................................................15

*Carmona-Rivera v. Puerto Rico*,
464 F.3d 14 (1st Cir. 2006).............................................................................................10, 11

*Caron v. Silvia*,
588 N.E. 2d 711 (Mass. App. Ct. 1992) ...............................................................................18

*Chapman v. Chevron Stations, Inc.*,
No. 1:09-cv-1324, 2011 WL 4738309 (E.D. Cal. Oct. 5, 2011)......................................13, 14

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
631 F.3d 939 (9th Cir. 2011) ...............................................................................................13

*City of Canton v. Harris*,
489 U.S. 378 (1989)..............................................................................................................15

*Connick v. Thompson*,
563 U.S. 51 (2011)................................................................................................................15

*Davignon v. Clemmey*,
322 F.3d 1 (1st Cir. 2003)...................................................................................................4, 5

*Dolan v. Chase Home Fin., LLC*,
   No. 12-11662, 2015 WL 4776786 (D. Mass. July 10, 2015) ..................................................8

*Duvall v. Cty. of Kitsap*,
   260 F.3d 1124 (9th Cir. 2001) ........................................................................................10, 15

*EEOC v. Fusaro Corp.*,
   No. 99-3321, 2000 WL 375256 (E.D. Pa. Apr. 11, 2000) ......................................................12

*Eiden v. Home Depot USA, Inc.*,
   No. 04-977, 2006 WL 1490418 (E.D. Cal. May 26, 2006) ....................................................13

*Everson v. Leis*,
   412 F. App'x 771 (6th Cir. 2011) ........................................................................................10

*Ezra Charitable Tr. v. Tyco Int'l, Ltd.*,
   466 F.3d 1 (1st Cir. 2006).......................................................................................................5

*Fortyune v. Am. Multi-Cinema, Inc.*,
   No. CV0105551NMJWJX, 2002 WL 32985838 (C.D. Cal. Oct. 22, 2002) ...........................14

*Grajales v. P.R. Ports Auth.*,
   682 F.3d 40 (1st Cir. 2012).....................................................................................................3

*Haley v. City of Boston*,
   657 F.3d 39 (1st Cir. 2011).....................................................................................................3

*J.V. v. Albuquerque Pub. Sch.*,
   813 F.3d 1289 (10th Cir. 2016) ............................................................................................15

*Kennedy v. City of Chi.*,
   No. 06 C 4914, 2007 WL 4553040 (N.D. Ill. Dec. 18, 2007) .................................................9

*Logan Equip. Corp. v. Simon Aerials, Inc.*,
   736 F. Supp. 1188 (D. Mass. 1990) ......................................................................................10

*Martin v. Davies*,
   917 F.2d 336 (7th Cir. 1990) ..................................................................................................7

*McEwen v. UPMC Shadyside Presbyterian Hosp.*,
   No. 2:09-cv-1181, 2010 WL 4879195 (W.D. Pa. Nov. 23, 2010)..........................................11

*Monahan v. Town of Methuen*,
   558 N.E.2d 951 (Mass. 1990) ...............................................................................................13

*Morrissey v. New England Deaconess Ass'n-Abundant Life Cmtys., Inc.*,
   940 N.E.2d 391 (Mass. 2010) ...............................................................................................17

*Muhammad v. Warithu-Deen Umar*,
    98 F. Supp. 2d 337 (W.D.N.Y. 2000) ........................................................................9

*Nieves-Marquez v. Puerto Rico*,
    353 F.3d 108 (1st Cir. 2003) .................................................................................10

*Nottingham Partners v. Trans-Lux Corp.*,
    925 F.2d 29 (1st Cir. 1991) ...........................................................................4, 5, 7

*Obiri v. Holder*,
    No. H-10-208, 2011 WL 1157471 (S.D. Tex. Mar. 24, 2011) .................................9

*Parker v. Universidad de P.R.*,
    225 F.3d 1 (1st Cir. 2000) ........................................................................11, 12, 17

*Patrazza v. Commonwealth*,
    497 N.E.2d 271 (Mass. 1986) .................................................................................18

*Roberts v. City of Omaha*,
    723 F.3d 966 (8th Cir. 2013) .................................................................................15

*Santiago v. Bloise*,
    741 F. Supp. 2d 357 (D. Mass. 2010) ....................................................................16

*Santiago v. Fenton*,
    891 F.2d 373 (1st Cir. 1989) .................................................................................15

*Smith v. Blue Cross Blue Shield of Kan., Inc.*,
    102 F.3d 1075 (10th Cir. 1996) .............................................................................11

*Smith v. MBTA*,
    968 N.E.2d 884 (Mass. 2012) ................................................................................16

*Sonia v. Town of Brookline*,
    914 F. Supp. 2d 36 (D. Mass. 2012) .....................................................................15

*Stamm v. N.Y. City Transit Auth.*,
    No. 04-CV-2163, 2013 WL 244793 (E.D.N.Y. Jan. 22, 2013) .............................12

*Strominger v. Brock*,
    592 F. App'x 508 (7th Cir. 2014) ..........................................................................10

*Van Gorder v. Lira*,
    No. 9:08-CV-281, 2010 WL 1235328 (N.D.N.Y. Mar. 15, 2010) ...........................9

**Statutes**

M.G.L. c. 161A, § 2 ....................................................................................................2

M.G.L. c. 258 ................................................................................................................................16

M.G.L. c. 258, § 2 .........................................................................................................................12

M.G.L. c. 258, § 10 .......................................................................................................................16

**Rules**

Fed. R. Civ. P. 12(b)(6) ..............................................................................................................1, 3

Defendant Massachusetts Bay Transportation Authority ("MBTA") respectfully submits this Memorandum of Law in support of its Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## **INTRODUCTION**

This lawsuit consists of two claims, one for purported violations of the Americans with Disabilities Act ("ADA"), and one state-law negligence claim.  The alleged events that prompted this suit are straightforward.  According to the Complaint, in June 2014, a wheelchair-dependent passenger, David LeClair, was exiting one of the MBTA's rail cars in South Station and fell out of his wheelchair when its wheels were caught in the space between the rail car and the platform. He alleges that there were no signs or other instructions telling passengers with disabilities how to obtain assistance in boarding or exiting a train, nor were there employees to communicate with such passengers or to assist them with the boarding or exiting processes—all allegedly in violation of the ADA.

The ADA claim fails for several independent reasons.  First, Mr. LeClair is not legally entitled to any relief under the ADA.  The doctrines of res judicata and release bar Mr. LeClair from pursuing the injunctive relief that he seeks, as his claims overlap completely with those settled and released in an earlier class action.  Money damages also are unavailable under the ADA.  Mr. LeClair's only basis for monetary damages is personal injury, and the ADA does not allow plaintiffs to seek recovery for personal injuries.  In addition, because the MBTA falls under Title II of the ADA, any claim for monetary damages requires facts to support intentional discrimination and, more specifically, discriminatory animus.  Mr. LeClair has pled no such facts.

Even if Mr. LeClair's ADA claim were not barred by res judicata and even if the ADA permitted damages for injuries, the claim would still not be viable as Mr. LeClair failed to allege

sufficient facts. Insofar as his claim concerns the structure and design of the MBTA's rail system, Mr. LeClair failed to plead an essential ingredient: the design regulations that the MBTA purportedly failed to follow. Mr. LeClair's failure-to-train theory likewise has no merits, as Mr. LeClair failed to plead that any alleged failure to train was the result of the MBTA's supposed "deliberate indifference."

That only leaves Mr. LeClair's state-law negligence claim, which is barred by sovereign immunity. Mr. LeClair asserts that the MBTA acted negligently for allegedly failing to implement programs and policies to promote safety, to encourage open communication with passengers with disabilities, and to warn passengers of gaps between rail cars and platforms. These are all policy-making functions, and, as such, the discretionary function exception to the MBTA's waiver of sovereign immunity prohibits suit.

Lacking any basis for relief under the ADA or a state-law negligence theory, Mr. LeClair's Complaint must be dismissed in its entirety.

## STATEMENT OF FACTS[1]

The MBTA is a "body politic . . . and a political subdivision" of the Commonwealth of Massachusetts. M.G.L. c. 161A, § 2. It is responsible for operating a vast public transportation network in the Greater Boston area, part of which includes an extensive rail system.

The facts, as alleged, are as follows. On June 25, 2014, Mr. LeClair entered the MBTA's transit system at the Back Bay Station. Compl. ¶ 12-13. Mr. LeClair, who relies on a wheelchair due to a prior partial amputation of both his legs, boarded an Orange Line train. *Id.* ¶ 14. He exited at the Downtown Crossing Station and made his way to the Red Line transfer point in the station. *Id.* ¶¶ 15, 18. From there, Mr. LeClair boarded the Red Line train and traveled to South Station. *Id.* ¶ 19.

---

[1] For the purposes of this motion, the allegations contained in the Complaint are treated as true.

When Mr. LeClair attempted to exit the train at South Station, one of the front wheels of his wheelchair was caught in the gap between the rail car and the Red Line platform of South Station. *Id.* ¶ 21. Mr. LeClair fell out of his wheelchair and landed on the platform. *Id.* Bystanders assisted Mr. LeClair back onto his wheelchair. *Id.* ¶ 23. Mr. LeClair tried to use the call box on the station platform but received no response. *Id.* He then found an MBTA inspector, to whom he reported the incident. *Id.* Mr. LeClair claims that, as a result of this incident, he "suffered personal injury" that required additional amputation of both of his legs, which purportedly prevents him from ever using a prosthesis on one of his legs. *Id.* ¶¶ 24, 25.

Mr. LeClair alleges that he did not receive any assistance as he entered Back Bay Station, boarded the Orange Line train there, exited at Downtown Crossing, and boarded the Red Line train at South Station. *Id.* ¶¶ 13-15, 18. He alleges that, during his journey, he was unable to find MBTA employees who could offer assistance with the boarding or exiting processes. *Id.* ¶¶ 14-15, 17. Mr. LeClair also claims that he did not see signs or other instructions informing riders with disabilities on how to obtain assistance in the boarding or exiting processes, *id.* ¶¶ 16, 18, 20, and that the operator of his Red Line train did not leave his post at the time of the South Station incident, *id.* ¶ 22.

## ARGUMENT

### I.   STANDARD OF REVIEW

In reviewing a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), this Court "accept[s] the truth of all well-pleaded facts and draw[s] all reasonable inferences therefrom in the pleader's favor." *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012). The Complaint may be "augment[ed] [by] facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011). To

survive a motion to dismiss, a complaint must "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## II.   MR. LECLAIR'S COMPLAINT DOES NOT STATE A BASIS FOR RELIEF UNDER THE ADA.

Mr. LeClair's ADA claim fails, because, as a matter of law, he is not entitled to an injunction or money damages under the ADA.  His claim for injunctive relief fails because res judicata and the doctrine of release prohibit him from pursuing it.  An earlier case, *Daniels-Finegold v. MBTA*, resolved Mr. LeClair's claim for injunctive relief; he is thus bound by the terms of the *Daniels-Finegold* settlement agreement and release.  And Mr. LeClair's claim for money damages is barred both because he has not pled intentional discrimination in the form of discriminatory animus (a necessary predicate for money damages), and because the ADA does not permit recovery for a personal injury.   Finally, Mr. LeClair's ADA claim fails for the separate and independent reason that he has failed to allege either that the MBTA has run afoul of a specific ADA design regulation, or that the MBTA acted with deliberate indifference, the lack of which is fatal to his claim.

### A.   MR. LECLAIR IS NOT ENTITLED TO INJUNCTIVE RELIEF UNDER THE ADA.

#### 1.   Mr. LeClair's ADA claim for injunctive relief is barred by res judicata and release.

It is "crystal clear" in the First Circuit that "a suit can be barred by the earlier settlement of another suit in either of two ways:  *res judicata* or release." *Davignon v. Clemmey*, 322 F.3d 1, 17 (1st Cir. 2003) (quotations and citation omitted).  "The defenses are separate and distinct," but both use the fact of an earlier settlement to preclude a later lawsuit. *Nottingham Partners v. Trans-Lux Corp.*, 925 F.2d 29, 31-32 (1st Cir. 1991).  The two doctrines apply even if the settlement with preclusive effect was entered as part of a class action in which the later plaintiff

did not personally participate.  *Id*.  Here, both doctrines bar Mr. LeClair's ADA claim for injunctive relief.

As an initial matter, this Court may take judicial notice of the settlement with preclusive and releasing effect—a settlement agreement that the MBTA entered into with a certified class in *Daniels-Finegold v. MBTA*, No. 1:02-cv-11504-MEL, Dkt. 50 (D. Mass. June 15, 2006) ("Settlement Agreement"), attached as Exhibit A.  *See Ezra Charitable Tr. v. Tyco Int'l, Ltd.*, 466 F.3d 1, 9 n.7 (1st Cir. 2006) (granting motion to take judicial notice of a complaint, consent decree, and final judgment).

> a.   Mr. LeClair's ADA claim for injunctive relief is barred by the
> doctrine of release.

A release from an earlier case bars a claim in a later case when the defendant establishes that "the release applied to [the plaintiff], encompassed the [] claim [presently] interposed in the district court, and was legally enforceable (*e.g.*, not the product of fraud or duress)."  *Davignon*, 322 F.3d at 17.  Once a defendant "establishe[s] the existence of the release," the plaintiff "bear[s] the burden of proving its invalidity."  *Id.*

The release provision of the Settlement Agreement bars Mr. LeClair's ADA claim for injunctive relief.  *See* Ex. A, Settlement Agreement, at ¶ 102.  That provision states:

> Plaintiffs, individually and for and on behalf of all persons with mobility, vision and hearing disabilities, fully, finally and forever release, relinquish, discharge, and waive any and all accessibility and accessibility-related claims for injunctive and declaratory relief concerning MBTA fixed route bus and subway systems which they now have or may have ever had against the MBTA, its officers, board members, employees, attorneys, and agents, arising out of any act, omission, or occurrence, from the beginning of the world until the effective date of this agreement, including without limitation any and all claims for injunctive or declaratory relief arising out of or relating to the facts, transactions, occurrences or subject matter described in the Amended Complaint filed in the Lawsuit, and all claims under 42 U.S.C. § 12131 et <u>seq.</u> (the Americans with Disabilities Act), 29 U.S.C. § 794 (the Rehabilitation Act), or any other federal or state law that addresses the accessibility of fixed route bus and subway systems for individuals with mobility, vision or hearing disabilities.

The first factor is obviously satisfied—the Settlement Agreement's release applies to Mr. LeClair because he is a "person[] with mobility . . . disabilities." *Id.* The class members include disabled individuals "who use, *will use*, or would use the bus, light rail, and heavy rail rapid transit services operated by the MBTA who are, *or will in the future be*, denied equal use of these services because the services are not readily accessible to and usable by individuals with such disabilities." Ex. A, Order for Final Judgment, at ¶ 3 (emphases added).

The second release factor—whether the release "encompasse[s] the [] claim interposed" by Mr. LeClair—is satisfied because there is complete overlap between the "accessibility and accessibility-related claims" covered by the release and Mr. LeClair's ADA claim.[2] Mr. LeClair asserts that the MBTA should have (1) installed certain signage or other instructions for wheelchair-equipped riders, both at its stations and on its rail cars; (2) properly trained its personnel on how to work with riders with disabilities; (3) ensured that riders with disabilities had the ability to communicate with MBTA personnel; and (4) built or modified South Station in a manner that eliminated the gap between the subway car and platform. Compl. ¶ 27. The Settlement Agreement addresses all of these issues and provides remedies for them.[3]

Moreover, it is no defense that Mr. LeClair himself was not involved in the earlier lawsuit. Mr. LeClair's allegations cover the same claims as those in the *Daniels-Finegold* lawsuits. Those claims are subject to a consent decree that is continuing in nature, over which another judge of this Court has jurisdiction. Ex. A, Order for Final Judgment, at ¶ 6 ("The class

---

[2] Because the release covers only "claims for injunctive and declaratory relief," Ex. A, Settlement Agreement, at ¶ 102, it does not apply to Mr. LeClair's claim for money damages.

[3] *See* Ex. A, Settlement Agreement, at ¶ 45 ("The MBTA shall develop and implement an improved and standardized system for signage, wayfinding and navigation in MBTA stations that will enable passengers to determine how to navigate the station."); *id.* ¶ 51 ("The MBTA shall ensure that emergency call boxes (ECBs) are maintained in proper working order and are designed to be usable by people with disabilities."); *id.* ¶ 76 (imposing changes to "training programs" to ensure employee familiarity with the ADA").

members are permanently barred and enjoined from instituting or prosecuting, either directly, representatively, derivatively, or in any other capacity, any action against the MBTA asserting any of the claims released by them in the Settlement Agreement."); *id.* ¶ 7 ("The Court . . . hereby retains and reserves jurisdiction over implementation and performance of the Settlement Agreement . . . .").  Allowing a collateral attack by any person who, after the date of settlement, brings the same claims in a separate lawsuit, like Mr. LeClair, would render the consent decree a nullity.  *See Martin v. Davies*, 917 F.2d 336, 339 (7th Cir. 1990) (noting that there is "little point in construing the [consent] decree as binding only those [who were in the class] on the day the decree was signed," as "[o]bviously, the group's composition changes every day").[4]  The fact that the MBTA's obligations are continuing means that Mr. LeClair's claim falls within the Settlement Agreement's scope of coverage regardless of when he became part of the class, particularly as the relief he seeks is already subsumed within the Settlement Agreement itself. *See id.*

Finally, the release was not a product of fraud or duress and is thus legally enforceable. *See Nottingham Partners*, 925 F.2d at 33.  Indeed, the Settlement Agreement was the product of a full and fair settlement process, complete with a fairness hearing.  The *Daniels-Finegold* court employed all of the requisite "procedural safeguards" necessary to validate the Settlement Agreement.  *See id.*

Accordingly, the Settlement Agreement's release provision bars Mr. LeClair from bringing his claim for injunctive relief under the ADA.

---

[4]  *Martin* involved a consent decree that did not explicitly discuss future class members.  Rather, the court understood "by inference" that future class members were included.  917 F.2d at 339.

        b.      Mr. LeClair's ADA claim for injunctive relief is also barred by the doctrine of res judicata.

"The three required elements of claim preclusion under federal law are:  (1) a final judgment on the merits in an earlier proceeding, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two actions." *Dolan v. Chase Home Fin., LLC*, No. 12-11662, 2015 WL 4776786, at \*11-12 (D. Mass. July 10, 2015), *report and recommendation adopted by* 2015 WL 4762672 (D. Mass. Aug. 11, 2015) (citation and internal quotation marks omitted).  Regardless of the Settlement Agreement's release, res judicata separately bars Mr. LeClair's claim for injunctive relief under the ADA.

The MBTA easily satisfies the first two factors.  The final judgment that followed the *Daniels-Finegold* court's approval of the Settlement Agreement is a "final judgment on the merits in an earlier proceeding."  *See* Ex. A, Order for Final Judgment.  Mr. LeClair's ADA cause of action is identical to a subset of the claims brought by the class plaintiffs in *Daniels-Finegold*.  Like Mr. LeClair, the *Daniels-Finegold* plaintiffs alleged that the MBTA failed to make "the MBTA's fixed route public train system readily accessible," including by allegedly failing "to respond to calls from riders with disabilities seeking assistance," failing "to provide adequate and accessible directional signage," failing "to provide accessible telecommunications access," and failing to "deploy a gap filler upon request."  *Compare* Ex. B ¶ 17(b) (*Daniels-Finegold* Complaint), *with* Compl. ¶¶ 10(K) (MBTA's facilities are not "readily accessible"); *id.* ¶ 27(f) (MBTA failed to "provide any method . . . to communicate with MBTA personnel while on a subway car"); *id.* ¶ 27(a)-(c) (MBTA failed to "place any signs, placards, recorded messages or other instructions").  Mr. LeClair has alleged the additional fact of a personal injury, but that does not alter the preclusive effect of *Daniels-Finegold* as to injunctive relief.  *See Blunt*

*v. Lower Merion Sch. Dist.*, 767 F.3d 247, 277 (3d Cir. 2014) (allegation of "several new and discrete discriminatory events" does not affect preclusive effect of class judgment (citation and internal quotation marks omitted)).

The third factor—the "identicality" of the parties—also weighs in favor of res judicata, because Mr. LeClair is a member of the *Daniels-Finegold* class.  The certified class was defined as:

> All individuals with mobility, hearing or visual disabilities, as defined by Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131(2), who use, will use, or would use the bus, light rail and heavy rail rapid transit services operated by the MBTA who are, or will in the future be, denied equal use of these services because the services are not readily accessible to and useable by individuals with such disabilities.

Ex. A, Order for Final Judgment, at ¶ 3.  The class encompasses disabled people who had used the transit system and those who would use it in the future.  As is true with the doctrine of release, whether Mr. LeClair was a member of the class at the time of the *Daniels-Finegold* settlement and judgment is irrelevant for purposes of res judicata—"[a]ll party-members, including absent members *and future members*, are equally bound by the strictures of the class action judgment."  *Muhammad v. Warithu-Deen Umar*, 98 F. Supp. 2d 337, 340-41 (W.D.N.Y. 2000) (emphasis added);[5] *see Blunt*, 767 F.3d at 277 (res judicata applies "even though the precluded claim was not presented, *and could not have been presented*, in the class action itself" (emphasis added) (citation and internal quotation marks omitted)).  All three factors of res judicata are fully met here and require dismissal of this collateral attack on a final judgment.

---

[5] *Accord Obiri v. Holder*, No. H-10-208, 2011 WL 1157471, at *6 (S.D. Tex. Mar. 24, 2011) (citing *Penson v. Terminal Transp. Co.*, 634 F.2d 989, 996 (5th Cir. 1994));  *Van Gorder v. Lira*, No. 9:08-CV-281, 2010 WL 1235328, at *4 (N.D.N.Y. Mar. 15, 2010), *report and recommendation adopted by* 2010 WL 1235283 (N.D.N.Y. Mar. 30, 2010); *Kennedy v. City of Chi.*, No. 06 C 4914, 2007 WL 4553040, at *6 (N.D. Ill. Dec. 18, 2007).

**B.    MR. LECLAIR IS NOT ENTITLED TO MONEY DAMAGES UNDER THE ADA.**

**1.    Mr. LeClair's failure to allege intentional discrimination in the form of discriminatory animus bars him from obtaining money damages.**

The ADA provides for compensatory damages under Title II "only for intentional discrimination." *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 126 (1st Cir. 2003); *see also Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001) ("To recover monetary damages under Title II of the ADA . . . a plaintiff must prove intentional discrimination on the part of the defendant."). Specifically, a plaintiff must allege that there has been "animus toward the disabled." *Carmona-Rivera v. Puerto Rico*, 464 F.3d 14, 17 (1st Cir. 2006) (quoting *Nieves-Marquez*, 353 F.3d at 126-27).[6]

There is not a single allegation of intentional discrimination in the Complaint. To the contrary, Mr. LeClair's allegations are couched in negligence—that the MBTA *failed* to take certain actions purportedly required of it under the ADA. For example, Mr. LeClair alleges that the MBTA failed to provide proper instructions on how wheelchair users can navigate the system (both in a rail car and in the station itself). Compl. ¶¶ 27(a)-(c). The alleged failure to comply with one of the ADA's requirements is not nearly enough to prove intentional discrimination. *See, e.g.*, *Strominger v. Brock*, 592 F. App'x 508, 511-12 (7th Cir. 2014) (failure to comply with ADA Accessibility Guidelines is "insufficient" to show intentional discrimination). Nor is it enough for Mr. LeClair to assert that the MBTA failed to adequately train its personnel on how to work with passengers with mobility disabilities. *See Everson v. Leis*, 412 F. App'x 771, 780 n.3 (6th Cir. 2011) ("[T]he failure to train officers on how to comply with the ADA is not intentional discrimination.").

---

[6] A plaintiff may also allege economic harm, but Mr. LeClair has not asked for such relief. *See Carmona-Rivera*, 464 F.3d at 17. Examples of economic harm include "lost profits and harm to business reputation," which Mr. LeClair has not alleged. *See Logan Equip. Corp. v. Simon Aerials, Inc.*, 736 F. Supp. 1188, 1198 (D. Mass. 1990).

At bottom, the Complaint is devoid of anything suggesting that the MBTA's purported "failures to provide accommodations . . . were anything more than the result of a slow-moving bureaucracy or that they were intentionally undertaken by the [MBTA] to *purposefully discriminate* against [Mr. LeClair] because of [his] disability." *Carmona-Rivera*, 464 F.3d at 18 (emphasis added). Without a plausible and substantiated allegation of discriminatory animus, "monetary damages are not available." *Id.*

### 2. Because Mr. LeClair's claim is premised solely on an allegation of personal injury, money damages are not available under the ADA.

Congress did not intend for the ADA to serve as a personal-injury-recovery statute. Although a claim of personal injury will not automatically bar a plaintiff from pursuing an ADA claim, such an injury is not probative of an ADA violation—it is, at most, "an additional consequence of the violation of [a] statutory duty." *Parker v. Universidad de P.R.*, 225 F.3d 1, 7 (1st Cir. 2000).

Indeed, the ADA disallows recovery for a personal injury. Courts have resoundingly held that the ADA was not meant to "remedy every isolated incident of harm"; claims of personal injury have their remedy in tort, not the ADA. *Smith v. Blue Cross Blue Shield of Kan., Inc.*, 102 F.3d 1075, 1077 (10th Cir. 1996); *see also Aponik v. Verizon Pa. Inc.*, 106 F. Supp. 3d 619, 624-25 (E.D. Pa. 2015) ("[T]here is no recovery for personal injury under the ADA because its express language excludes it."); *McEwen v. UPMC Shadyside Presbyterian Hosp.*, No. 2:09-cv-1181, 2010 WL 4879195, at *7 (W.D. Pa. Nov. 23, 2010) (an employee "cannot recover under the ADA . . . for personal injuries allegedly caused"); *Bertinetti v. Joy Mining Mach.*, 231

F. Supp. 2d 828, 835 (S.D. Ill. 2002) ("To the extent [the employee] is attempting to raise a personal injury claim . . . his remedy lies in tort . . . .").[7]

Mr. LeClair's claim for money damages is premised entirely on his personal injury (for which the ADA provides no remedy). He seeks recovery for his "personal injury, . . . pain and suffering . . . medical bills and other out-of-pocket expenses related to his injuries." Compl. ¶ 38. To be sure, the ADA allows for certain types of compensatory damages (like backpay), but those damages must arise from the discrimination, not ancillary physical injury. *See, e.g.*, *Stamm v. N.Y. City Transit Auth.*, No. 04-CV-2163, 2013 WL 244793, at *6 (E.D.N.Y. Jan. 22, 2013) (money damages for emotional distress "proximately caused by the discriminatory conduct of the City" are recoverable (quoting *Tsombanidis v. City of West Haven*, 180 F. Supp. 2d 262, 295 (D. Conn. 2001))); *EEOC v. Fusaro Corp.*, No. 99-3321, 2000 WL 375256, at *8 (E.D. Pa. Apr. 11, 2000) (compensatory damages for "inconvenience, mental anguish and fear *caused by defendant's unlawful discrimination*" (emphasis added)). Mr. LeClair has not alleged any such compensable injury arising from the discrimination itself. Rather, his claim to monetary damages lies in his personal injury, for which the ADA does not allow recovery.

The Massachusetts Tort Claims Act (MTCA) reinforces the point that the ADA is not the appropriate vehicle for pursuing a personal injury claim. The MTCA prohibits Mr. LeClair from maintaining both a state-law negligence action for a personal injury *and* an ADA action premised on that same personal injury. M.G.L. c. 258, § 2 states that the remedies of the Tort Claims Act

---

[7] In *Parker*, the First Circuit held that an ADA claim did not "convert . . . into a traditional negligence action" just because a personal injury had been alleged. *Id.* at 7. As a result, traditional negligence defenses did not defeat an otherwise properly pled ADA claim. *See id.* at 7-8. In contrast, Mr. LeClair's ADA claim is not properly pled and cannot be remedied for the reasons stated *infra* Section II. Mr. LeClair may argue that *Parker* allows plaintiffs to seek money damages for personal injury. However, *Parker* does no such thing; rather, the First Circuit explicitly avoided that question. 225 F.3d at 8 (raising the issue of monetary damages "to avoid any suggestion that [the court's] decision implies a resolution of [that] issue"). Any effort to read *Parker* more broadly should be resisted, particularly in light of the compelling case law developed in other courts in the intervening 17 years since *Parker* was decided. *See supra* at 11.

"shall be exclusive of any other civil action or proceeding by reason of the same subject matter against the public employer."   Accordingly, Mr. LeClair can only pursue his state-law claim; he cannot also pursue a (meritless) ADA claim.   *See Monahan v. Town of Methuen*, 558 N.E.2d 951, 955 (Mass. 1990) (allowing for recovery under two separate statutory vehicles, one of which is the Tort Claims Act, is "inconsistent with the legislative intent behind the Tort Claims Act's exclusivity provision").

### C.     MR. LECLAIR'S ADA CLAIM FAILS TO IDENTIFY AN ADA VIOLATION.

#### 1.     The Complaint does not identify how the MBTA violated the comprehensive regulatory framework covering the design of facilities.

When a plaintiff argues that a defendant violated the ADA by failing to make the design of a facility accessible, that plaintiff must identify a regulation that was purportedly violated because facilities that meet the requirements of the existing comprehensive framework are understood to be in compliance with the ADA.   *See, e.g.*, *Eiden v. Home Depot USA, Inc.*, No. 04-977, 2006 WL 1490418, at *8 (E.D. Cal. May 26, 2006) (language of ADA Accessibility Guidelines "plainly implies that compliance with the ADAAG, and not another standard, constitutes compliance with the ADA requirements for new construction").

The design regulations are meant to be all encompassing—providing "the objective contours of the standard that architectural features must not impede disabled individuals' full and equal enjoyment of accommodations."   *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (en banc).   Because the regulations are "as precise as they are thorough," violating a design provision is understood to be a *per se* violation of the ADA, *i.e.*, a regulatory violation "will impair the plaintiff's full and equal access, which constitutes 'discrimination' under the ADA."   *Id.* at 945, 947.   On the other hand, if a plaintiff fails to identify a violation of an applicable design regulation, there is no design-based ADA claim.   *See, e.g., Chapman v.*

*Chevron Stations, Inc.*, No. 1:09-cv-1324, 2011 WL 4738309, at *4-5 (E.D. Cal. Oct. 5, 2011); *see also Fortyune v. Am. Multi-Cinema, Inc.*, No. CV0105551NMJWJX, 2002 WL 32985838, at *5 (C.D. Cal. Oct. 22, 2002) (acknowledging the plaintiff's "burden of showing that the theater failed to comply with a specific provision of the ADAAG" but noting that the plaintiff satisfied burden by identifying a provision).

The heart of Mr. LeClair's ADA claim is a design claim: that the MBTA imposed barriers and violated the ADA by failing to provide proper accommodations to account for a station's design—specifically, the physical gap between a rail car and a station platform. Compl. ¶ 27(b) ("gap between the Red Line subway car . . . and the platform"), *id.* ¶ 27(c) ("from the subway car to the platform"); *id.* ¶ 27(e) ("build or modify . . . platform to prevent or remove a gap between the subway car and the platform"), *id.* ¶ 28 ("physical barriers"). Mr. LeClair contends that the MBTA had an obligation to provide signage and "other instructions" to compensate for this purported design flaw, *id.* ¶ 27(a), (b), (c), to design its rail cars in a manner that provided for a means of communication for wheelchair-equipped riders, *id.* ¶ 27(f), and to "build or modify its South Station Red Line platform to prevent or remove [the] gap," *id.* ¶ 27(e). But the Complaint does not cite a single provision of any regulatory scheme that might have compelled the MBTA to provide such accommodations. Thus, without notice of the applicable regulations that were violated, Mr. LeClair's ADA claim must fail insofar as the design of the MBTA's rail system is concerned. *See Chapman*, 2011 WL 4738309, at *4-5; *Fortyune*, 2002 WL 32985838, at *5.

### 2.    The Complaint does not allege sufficient facts to show deliberate indifference.

In addition to his design-related ADA allegations, Mr. LeClair argues that the MBTA violated the ADA by failing to adequately train its personnel on how to accommodate passengers

with disabilities.  But the failure-to-train theory fails because Mr. LeClair has not adequately pleaded *deliberate indifference*, a necessary component of such a theory.

To the extent that a failure-to-train claim is colorable at all under the ADA,[8] a plaintiff alleging such a claim must set forth facts showing deliberate indifference.  *J.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1298 (10th Cir. 2016) ("stringent proof to establish deliberate indifference" for ADA failure-to-train claim); *Roberts v. City of Omaha*, 723 F.3d 966, 975-76 (8th Cir. 2013) ("As is the case for failure to train claims arising under § 1983, actions under the ADA and the Rehabilitation Act require proof of deliberate indifference.").  To allege deliberate indifference, a plaintiff must show "both [a defendant's] knowledge that a harm to a federally protected right is *substantially likely*, and a failure to act upon that [] likelihood."  *Duvall*, 260 F.3d at 1139 (emphasis added); *see also City of Canton v. Harris*, 489 U.S. 378, 395 (1989) (O'Connor, J., concurring) (deliberate indifference requires both "some form of notice . . . and the opportunity to conform to . . . dictates").  To hold a governmental entity liable for deliberate indifference, "a plaintiff must show that the policy or custom of the [entity]" led to the violation at hand.  *See Santiago v. Fenton*, 891 F.2d 373, 381 (1st Cir. 1989).

"Deliberate indifference is a stringent standard of fault," *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation and internal quotation marks omitted), and Mr. LeClair's Complaint falls far short of that standard.  Mr. LeClair alleges only one interaction (or lack thereof) with an MBTA employee—an operator who purportedly failed to exit the train after Mr. LeClair fell onto the platform.  Compl. ¶ 22.  But isolated instances of alleged misconduct are not enough to show deliberate indifference, and a failure-to-train claim against a governmental entity based on an isolated incident must be dismissed for failure to state a claim.  *See, e.g., Sonia v. Town of*

---

[8] The First Circuit "bypass[ed] the question of whether Title II of the ADA imposes" training-related duties in *Buchanan v. Maine*, 469 F.3d 158, 177 (1st Cir. 2006).

*Brookline*, 914 F. Supp. 2d 36, 46 (D. Mass. 2012) ("[I]t is extremely difficult to sustain a failure to train claim based upon a single incident of misconduct. . . ."); *Santiago v. Bloise*, 741 F. Supp. 2d 357, 362 (D. Mass. 2010) ("[E]vidence of a single event alone cannot establish a municipal custom or policy . . . ." (quoting *Argueta v. City of Revere*, No. 09-10268, 2009 WL 2462622, at *1 (D. Mass. Aug. 11, 2009))).  Having failed to allege nothing more than an isolated incident, Mr. LeClair has failed to allege sufficient facts to demonstrate a deliberate policy not to train the MBTA's employees.  His failure-to-train ADA claim must therefore be dismissed.

### III. SOVEREIGN IMMUNITY BARS MR. LECLAIR'S STATE-LAW NEGLIGENCE CLAIM.

Mr. LeClair's remaining state-law negligence claim does not save his case from dismissal.

Under Massachusetts law, tort claims against governmental entities must fall under one of the narrow waivers of sovereign immunity found in the Massachusetts Tort Claims Act, M.G.L. c. 258.  The MBTA is a "public employer" for purposes of the act; accordingly, "the MBTA is not amenable to suit without the Commonwealth's express consent."  *Smith v. MBTA*, 968 N.E.2d 884, 888 (Mass. 2012).  Even where an exception to sovereign immunity applies, the Tort Claims Act carves out certain exceptions to suit.  *See* M.G.L. c. 258, § 10.  Here, the discretionary-function exception prevents Mr. LeClair from proceeding with his state-law negligence claim.  *See* M.G.L. c. 258, § 10(b).

Mr. LeClair alleges that the MBTA had a duty to "provide him with safe and reasonable access to and from its stations, facilities and subway cars," Compl. ¶ 27(b) (ADA), *id.* ¶ 34 (negligence), a duty to "provide him with the means to communicate with MBTA personnel to gain safe and reasonable entrance and exit from its subway cars," *id.* ¶ 27(f) (ADA), *id.* ¶ 35 (negligence), and a duty to "warn him of the existence of or risk of a gap between the Red Line subway car . . . and the platform at the South Station Red Line platform," *id.* ¶ 27(b) (ADA), *id.*

¶ 36 (negligence).   Thus, Mr. LeClair is basing his negligence claim on policy decisions the MBTA made in designing its rail system and carrying out its duties to implement the ADA.

The problem with these negligence theories, however, is that they are barred by sovereign immunity.   Mr. LeClair is alleging that the MBTA was negligent as a policy matter because it failed to implement programs and policies to promote safety, to encourage open communication with passengers with disabilities, and to warn passengers of gaps between rail cars and platforms. Like any Title II entity, the MBTA possesses "flexibility to choose how best to make access available."   *Parker*, 225 F.3d at 6.   Under state law, to the extent that a negligence claim seeks recovery for the MBTA's policymaking decisions, that claim is barred because policy choices fall squarely within the discretionary function exception.

The discretionary function exception applies when the challenged governmental conduct is "an integral part of governmental policymaking or planning."   *Barnett v. City of Lynn*, 745 N.E.2d 344, 346 (Mass. 2001) (citation and internal quotation marks omitted); *see also Morrissey v. New England Deaconess Ass'n-Abundant Life Cmtys., Inc.*, 940 N.E.2d 391, 403 (Mass. 2010) (observing that the exception is for "discretionary conduct that involves policy making or planning" and applying immunity on review of a motion to dismiss).   The exception encompasses judgment calls on "how best to expend [the governmental entity's resources] in order to provide safe and secure conditions."   *Barnett*, 745 N.E.2d at 346.   It shields governmental entities from liability where, as here, the source of liability is a choice the entity made in constructing or maintaining a facility.   For instance, the discretionary function exception immunized the City of Lynn from liability when the city faced a wrongful death lawsuit over its "decision not to erect a fence or other barrier [] based on a determination of allocation of limited resources."   *Id.*   There, the plaintiff alleged that the city should have erected fences to prevent

children from sledding—two children were hit by oncoming traffic as they rode a sled off a jump and onto the road. *Id.* at 345-46. The SJC held that, "even if the city's decision were ill advised or unreasonable," the discretionary function exception "bar[red] the plaintiff's action." *Id.* at 347; *accord Patrazza v. Commonwealth*, 497 N.E.2d 271, 272-73 (Mass. 1986) (applying the discretionary function exception to bar suit where passenger claimed injury from the Commonwealth's decision not to bury the blunt end of a guardrail").

Here, Mr. LeClair is challenging the choices that the MBTA made in designing its rail system—specifically, an alleged decision not to post certain types of signs or to put a certain amount of distance between the track and the platform. That sort of negligence claim falls wholly within the discretionary function exception. It is therefore barred by the MBTA's sovereign immunity and should be dismissed. *See Caron v. Silvia*, 588 N.E. 2d 711, 273 (Mass. App. Ct. 1992) (noting the importance of resolving immunity "at the earliest possible stage of litigation, preferably before any discovery, on a motion to dismiss . . ."); *accord Brum v. Dartmouth*, 704 N.E.2d 1147, 1150-51 (Mass. 1999).

## <u>CONCLUSION</u>

For the foregoing reasons, the MBTA respectfully requests that Mr. LeClair's Complaint be dismissed with prejudice in its entirety.

Dated: September 29, 2017                    Respectfully Submitted,

                                   By:     /s/ Sarah K. Frederick
                                           Sarah K. Frederick
                                           GOODWIN PROCTER LLP
                                           100 Northern Avenue
                                           Boston, Massachusetts 02210
                                           Tel.:  617.570.1000
                                           Fax.:  617.523.1231
                                           sfrederick@goodwinlaw.com

                                           Andrew Kim (*pro hac vice* pending)
                                           GOODWIN PROCTER LLP
                                           901 New York Avenue, N.W.
                                           Washington, D.C. 20001
                                           Tel.:  202.346.4000
                                           Fax.:  202.346.4444
                                           andrewkim@goodwinlaw.com

                                           *Attorneys for Defendant*
                                           *Massachusetts Bay Transportation Authority*

19

## <u>CERTIFICATE OF SERVICE</u>

I, Sarah K. Frederick, hereby certify that a copy of the foregoing Memorandum of Law in Support of Defendant Massachusetts Bay Transportation Authority's Motion to Dismiss the Complaint, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies shall be served by first class mail postage prepaid on all counsel who are not served through the CM/ECF system on September 29, 2017.

<u>/s/ Sarah K. Frederick</u>
Sarah K. Frederick