# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DAVID LECLAIR, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. |
| ) | 17-11111-FDS |
| v. ) | |
| ) | |
| MASSACHUSETTS BAY ) | |
| TRANSPORTATION AUTHORITY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER
## ON DEFENDANT'S MOTION TO DISMISS

**SAYLOR, J.**

This is a claim for disability discrimination and negligence arising out of an accident at

the South Station Red Line subway station.  Plaintiff David LeClair, who is disabled, was exiting

the subway car in his wheelchair when the front wheel wedged in the gap between the car and

the platform, throwing him to the ground.  The complaint alleges that defendant Massachusetts

Bay Transportation Authority ("MBTA") failed to take measures to help disabled persons use the

subway in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*.

It further alleges that the MBTA was negligent in failing to provide plaintiff with safe and

reasonable access to the subway.

Defendant has moved to dismiss the complaint for failure to state a claim upon which

relief can be granted.  The principal question is whether plaintiff is bound, in whole or in part, by

the 2006 settlement of a class action brought against the MBTA for failure to provide disabled

persons equal access to the transit system.  For the reasons stated below, the motion will be

granted in part, and the Court will decline to exercise supplemental jurisdiction over the remaining state-law claim.

## I.   Background

### A.   Factual Background

The facts are set forth as described in the complaint.

David LeClair is a disabled person who requires a wheelchair to move because of a double leg amputation in 2013. (Compl. ¶ 11). On June 25, 2014, he was traveling to visit his mother. (*Id.* ¶ 12). He boarded the Orange Line at the Back Bay station and took an inbound train to Downtown Crossing, where he transferred to a southbound Red Line train. (*Id.* ¶ 13). When the train reached South Station, LeClair attempted to wheel himself onto the subway platform. (*Id.* ¶ 19). However, the front wheel "went into the gap" between the car and the platform, causing him to be thrown forward onto the platform. (*Id.* ¶ 21). The Red Line train conductor did not leave the subway car to offer assistance, although several passengers helped LeClair get back into his wheelchair. (*Id.* ¶¶ 22-23).

After getting back into the wheelchair, LeClair pushed an emergency button at the station platform. (*Id.* ¶ 23). However, according to the complaint, no MBTA employee assisted or spoke with him until he located a MBTA inspector to report the incident. (*Id.*). At Back Bay, Downtown Crossing, and South Station, LeClair was unable to locate MBTA employees who could provide assistance to disabled passengers and help them enter and exit subway cars. (*Id.* ¶¶ 14-15). Nor were there any signs or warnings posted about the risk gaps between subway cars and platforms posed to wheelchair-bound individuals. (*Id.* ¶¶ 16, 20).

The complaint alleges that the injuries sustained from LeClair's fall required surgery that removed a remaining portion of both legs. (*Id.* ¶ 24). The surgery also prevented him from ever

being able to use prosthetic devices.  (*Id.* ¶ 25).

**B.     Procedural Background**

The complaint asserts two claims against defendant:  a claim for violation of the ADA

(Count 1) and a state-law negligence claim (Count 2).  Count 1 sets forth six alleged violations of

the ADA.  Defendant has moved to dismiss Count 1 on the grounds that the injunctive relief

sought is barred by the doctrine of claim preclusion (also known as *res judicata*) and release and

that money damages may not be awarded in the absence of intentional discrimination.

Defendant has also moved to dismiss Count 2 on the basis of sovereign immunity.

**II.     Legal Standard**

On a motion to dismiss, the court "must assume the truth of all well-plead[ed] facts and

give . . . plaintiff the benefit of all reasonable inferences therefrom."  *Ruiz v. Bally Total Fitness*

*Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir.

1999)).  To survive a motion to dismiss, the complaint must state a claim that is plausible on its

face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In other words, the "[f]actual

allegations must be enough to raise a right to relief above the speculative level, . . . on the

assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555

(citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it

asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  Dismissal is appropriate if the

complaint fails to set forth "factual allegations, either direct or inferential, respecting each

material element necessary to sustain recovery under some actionable legal theory."  *Gagliardi v.*

*Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano*

*de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

**III.    Analysis**

      **A.    Count One – Violation of the ADA**

In Count One, plaintiff seeks both injunctive relief and money damages arising out of

alleged violations of the ADA.  The equitable and legal aspects of the claim require different

analyses, and will be addressed separately.

      **1.    Claim Preclusion**

Defendant contends that plaintiff's claim for injunctive relief under the ADA is barred by

the doctrine of claim preclusion, or *res judicata*.  "*Res judicata* is a valid defense to a later suit if

(1) there is a final judgment on the merits of an earlier action, and (2) there is identity of the

parties and (3) identity of the claims in both suits."  *Reppert v. Marvin Lumber & Cedar Co.,* 359

F.3d 53, 56 (1st Cir. 2004) (citing *United States v. Cunan*, 156 F.3d 110, 114 (1st Cir. 1998)).

"In appropriate circumstances these rules are applicable to class actions."  *Id.* (citing *Matsuhita*

*Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 379 (1996)).  However, courts have stated that

claim preclusion "must be applied carefully in the class action context."  *Hiser v. Franklin*, 94

F.3d 1287, 1293 (9th Cir. 1996) (citing *Ferguson v. Dep't of Corr.*, 816 P.2d 134, 138 (Alaska

1991)).

Eleven years ago, the MBTA entered into a settlement agreement with plaintiffs in a

certified class action entitled *Daniels-Finegold v. Massachusetts Bay Transp. Auth.*  (Docket No.

10, Ex. 1 at 2).[1]  The plaintiffs in that case had sued the MBTA on behalf of a class of disabled

persons for failure to provide equal access to the public transportation system.[2]  In the consent

---

[1] The Court may consider the complaint and settlement agreement in *Daniels-Finegold* without converting defendant's motion to dismiss into a motion for summary judgment under Fed. R. Civ. P. 56, as both are public documents.  *See Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (holding that district courts may consider official public records in addressing a motion to dismiss).

[2] The complaint only requested injunctive relief and reasonable costs and attorney's fees.  No compensatory or punitive damages were sought.

decree, the MBTA pledged to make several hundred million dollars in new capital investment that would be used, among other things, to train employees, install elevators and escalators, acquire new buses, close platform gaps between subway cars and platforms, and install announcement and electronic message boards.

The parties in this litigation do not dispute that the settlement in *Daniels-Finegold* constituted a "final judgment on the merits" for the purpose of claim preclusion. Rather, the parties dispute whether there is sufficient "identity of the claims" and "identity of the parties."

The first question is whether plaintiff's claims here are sufficiently identical to those of the plaintiff class in *Daniels-Finegold*. It is clear that the complaint in *Daniels-Finegold* encompassed all types of ADA claims that disabled persons, particularly those with mobility impairments, could have against the MBTA. The *Daniels-Finegold* complaint alleged that the MBTA system was not "readily accessible" to persons with disabilities. (Docket No. 10, Ex. 2 ¶ 17(a)). That complaint further identified a variety of ADA violations, including ones that are at the heart of plaintiff's claims in the present suit, such as "failure to respond to calls from riders with disabilities seeking assistance in accessing a train," "failure to provide accessible telecommunications access, "failure to employ a [subway car-to-platform] gap filler," and "failure to adequately train and supervise employees." (*Id.* ¶ 17(b), (d)). The claims are therefore sufficiently identical to those in *Daniels-Finegold* to satisfy the standard.

Plaintiff contends that *Daniels-Finegold* never contemplated the specific injury he suffered here and thus the claims are not identical. (Pl.'s Opp. at 5-6). However, the inclusion of this particularized injury does not "compel a different result." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 277 (3d Cir. 2014). *See also Dubuc v. Green Oak Twp.*, 312 F.3d 736, 751 (6th Cir. 2002) ("[R]es judicata would become meaningless if a party could continue to relitigate

the same issue . . . by merely positing a few additional facts that occurred after the initial suit."); Restatement (Second) of Judgments § 25 cmt. b (1982) ("A mere shift in the evidence offered to support a ground held unproved in a prior action will not suffice to make a new claim avoiding the preclusive effect of the judgment.").

The second question is whether there is sufficient "identity of the parties." Class action settlements may cover both present and future class members. *Muhammad v. Warithu-Deen Umar*, 98 F. Supp. 2d 337, 340-41 (W.D.N.Y. 2000). *Cf Juris v. Inamed Corp.*, 685 F.3d 1294, 1302 (11th Cir. 2012) (affirming district court's application of *res judicata* to settlement covering "present and future claims"). As relevant here, there was a certified class in *Daniels-Finegold* covering "[a]ll individuals with . . . disabilities, as defined by Title II of the [ADA] . . . who use, will use, or would use the bus, light rail, and heavy rail rapid transit services . . . ." (Docket No. 10, Ex. 1 at 3). Therefore, the plain language of the settlement includes plaintiff as a class member.[3]

Plaintiff contends that because he was not a class member when the *Daniels-Finegold* settlement was approved, the application of claim preclusion would violate his due-process rights. Specifically, he states that he only became disabled in 2013 and therefore was not then a member of the class and never had an opportunity to "opt-out" of the *Daniels-Finegold* settlement. (Pl.'s Opp. at 8-10).[4] That argument, however, is unpersuasive for multiple reasons.

_____

[3] The First Circuit in *Montalvo-Huertas v. Rivera-Cruz*, 885 F.2d 971 (1989) found that a future class member was not a member of a plaintiff class in an earlier suit. However, that finding turned on the particular definition of the class, which was "composed of all the retail business establishments in Puerto Rico *until now* covered . . . ." *Id.* at 974.

[4] Plaintiff also contends that his claim is not barred by claim preclusion because he is seeking monetary damages under the ADA. The existence of a claim for monetary damages, however, does not affect the applicability of the doctrine to the equitable claims. Furthermore, and as set forth below, his claim for monetary damages under the ADA will be dismissed for failure to state a claim.

First, and as an initial matter, *Daniels-Finegold* was a Rule 23(b)(2) class action for

injunctive relief.[5]  Thus, even if plaintiff had been disabled as of 2006 and therefore a then-

present member of the class (as opposed to a future member), he would not have been permitted

to opt out.  "[Rule] 23(b)(2) does not require that class members be given notice and opt-out

rights, presumably because it is thought (rightly or wrongly) that notice has no purpose when the

class is mandatory."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 363 (2011).

Second, the *Daniels-Finegold* class explicitly included future members (that is, persons

who would become disabled in the future and who would use the MBTA).  Those persons were

found to be adequately represented by counsel at the time.  And after a fairness hearing, Judge

Lasker found that the settlement agreement was "fair, reasonable, and adequate" for the entire

class.  (Docket No. 10, Ex. 1 at 2).  There is nothing to suggest that future class members were

not bound by the settlement.  *See Martin v. Davies*, 917 F.2d 336, 339 (7th Cir. 1990) ("There

would be little point in construing [a consent] decree as binding only [persons in the class] on the

day the decree was signed.  Obviously, the group's composition changes every day.").  *Cf.*

*Riddick by Riddick v. School Bd. of City of Norfolk*, 784 F.2d 521, 532 (4th Cir. 1986)

(addressing issue preclusion rather than claim preclusion:  "While the actual makeup of class

members may be different because of the passage of time . . . we believe that the [plaintiff and

class] are in sufficient privity for the principles of collateral estoppel or issue preclusion to

apply.").

Third, the requested relief—that is, separate injunctive relief addressing the identical

subject matter—would undermine the finality of the settlement and create a substantial potential

---

[5] A Rule 23(b)(2) class may be certified where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

for inconsistent judgments.  The forms of equitable relief sought here overlap almost entirely

with the equitable relief provided in *Daniels-Finegold*.  If this Court were to issue a new

injunction, the terms of its order would either be redundant or conflict with the terms of the

existing consent decree.  Indeed, it is difficult to see how granting the relief requested here would

not effectively overrule, or supersede, the consent decree.

Under the circumstances, plaintiff's equitable claims for relief are barred by the doctrine

of claim preclusion.  He is seeking to relitigate the same issues that have already been resolved

by that proceeding, which he may not do.

That does not mean plaintiff is left without any recourse.  The consent decree sets forth a

five-step dispute resolution procedure for addressing claims that the MBTA is not complying

with its obligations.  (Docket No. 10, Ex. 1 ¶ 100).  It states:

> Any dispute concerning . . . compliance with this agreement shall be resolved as
> follows:  (a) the party initiating the dispute resolution process shall notify the
> other party in writing of the nature of the dispute and shall provide a reasonable
> explanation of the factual and legal basis for the party's position; (b) within 30
> days of the notice of dispute counsel for the parties shall confer to attempt to
> resolve the matter; (c) if counsel are unable to resolve the dispute, the MBTA and
> the plaintiffs shall meet in an effort to resolve the matter within 30 days of the
> date on which counsel concur that they cannot resolve the dispute; and (4) if the
> parties are unable to resolve the dispute they will request that the Court refer the
> matter to a Magistrate Judge for mediation; and (e) if the dispute has still not been
> resolved, counsel for the parties will submit the matter to the Court for formal
> resolution.

(*Id.*).  The *Daniels-Finegold* court also "retain[ed] and reserve[d] jurisdiction over

implementation and performance" of the settlement agreement.  (*Id.* at 3).  An independent

monitor was also appointed to "assess compliance" with the agreement.  (*Id.* ¶ 89).  Because the

court that issued the consent decree retained jurisdiction over enforcement, it is "the proper

forum for litigating a breach." *Anderson v. Beland*, 672 F.3d 113, 134 (2d Cir. 2011).

Accordingly, although claim preclusion bars plaintiff from seeking separate injunctive

relief in this suit, he may seek to have class counsel in *Daniels-Finegold* initiate the dispute

resolution process under the agreement. Or he may seek to intervene as a plaintiff in that

proceeding to enforce the settlement pursuant to the dispute-resolution clause. *See Wyatt by and*

*through Rawlins v. Rogers*, 92 F.3d 1074, 1079 (11th Cir. 1996) (noting that plaintiffs' motion to

intervene in the district court to enforce an existing settlement agreement was granted).

What plaintiff cannot do is simply relitigate the same issues in a new forum. Doing so

would effectively render the prior judgment a nullity. Accordingly, to the extent that plaintiff

seeks injunctive relief in this proceeding, it is barred by the doctrine of claim preclusion.

### 2. Release

Defendant further contends that the claim for injunctive relief under the ADA is barred

by release. The release clause states as follows:

> Plaintiffs . . . finally and forever release . . . any and all accessibility and
> accessibility-related claims for injunctive and declaratory relief concerning
> MBTA fixed route bus and subway systems *which they now have or may have*
> *ever had against the MBTA . . . from the beginning of the world until the effective*
> *date of this agreement*.

(Docket No. 10, Ex. 1 ¶ 102) (emphasis added). The plain meaning of the text suggests that only

claims that had accrued by the effective date of the settlement agreement were released. Because

plaintiff's claim arose in 2014, eight years after the settlement's execution, it is not barred by the

release.

### 3. Claim for Money Damages under the ADA

In passing the ADA, Congress created a private right of action that enables disabled

persons to bring discrimination suits to enforce their rights. *S.S. by S.Y. v. City of Springfield*,

146 F. Supp. 3d 414, 419 (D. Mass. 2015). But the ADA is not a wholesale substitute for

common-law personal-injury torts. Individuals can recover money damages under the ADA only

if they prove intentional discrimination by the defendant.  *See Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 126 (1st Cir. 2003); *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001).

Many circuit courts have held that the applicable standard for proving intentional discrimination is one of "deliberate indifference."  *See, e.g.*, *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 263 (3d Cir. 2013); *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 348 (11th Cir. 2012); *Meagley v. City of Little Rock*, 639 F.3d 384, 389 (8th Cir. 2011); *Barber ex rel. Barber v. Colorado Dep't of Revenue*, 562 F.3d 1222, 1228-29 (10th Cir. 2009); *Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008); *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 115 (2d Cir. 2001).  However, the First Circuit appears to have adopted the more stringent standard of "discriminatory animus."  *Nieves-Marquez*, 353 F.3d at 126-27; *Carmona-Rivera v. Puerto Rico*, 464 F.3d 14, 17-18 (1st Cir. 2006).

Proof of "deliberate indifference" does not require "a showing of personal ill will or animosity toward the disabled person."  *Meagley*, 639 F.3d at 389.  Rather, the test for deliberate indifference is comprised of two prongs:  (1) "knowledge that a harm to a federally protected right is substantially likely," and (2) "a failure to act upon that . . . likelihood."  *Barber*, 562 F.3d at 1229 (citing *Duvall*, 260 F.3d at 1139).  By contrast, proof of "discriminatory animus" requires a showing that defendant intended to discriminate against plaintiff based on his disability.  *See Liese*, 701 F.3d at 344 ("Discriminatory animus . . . requires a showing of prejudice, spite, or ill will.").  *See also Laurin v. Providence Hosp.*, 150 F.3d 52, 58 (1st Cir. 1998) (finding that direct evidence is usually needed to prove discriminatory animus); *Moebius v. Tharperobbins Co.*, 2016 WL 6476941, at *17-18 (D. Mass. Nov. 1, 2016).

Even under a generous reading, the complaint here does not make any factual allegations

10

that could reasonably give rise to an inference of deliberate indifference, let alone discriminatory animus. The complaint does not, for example, allege that defendant was aware of incidents prior to plaintiff's injury where other wheelchair-bound patrons were similarly harmed by the alleged ADA violations. Nor does the complaint allege that the MBTA knew that plaintiff had difficulty accessing the subway until he reported the accident to a MBTA inspector. (Compl. ¶ 23). The only factual allegation included in the complaint that supports plaintiff's claim is that the Red Line conductor did not leave the car to provide assistance after plaintiff fell onto the South Station platform. (*Id.* ¶ 22). Even assuming that the conductor was obligated to leave the train to provide assistance, an isolated instance of improper activity, without more, is insufficient to establish deliberate indifference. *See Laurin*, 150 F.3d at 58 ("Isolated, ambiguous remarks, are insufficient, by themselves, to prove discriminatory intent."). *Cf. Rios-Jimenez v. Principi*, 520 F.3d 31, 43 (1st Cir. 2008) (finding that "isolated and offhanded" incidents are "insufficient to establish a contested material issue of fact" in context of hostile work environment claim).[6]

The complaint accordingly fails to allege facts that could plausibly result in an inference that defendant acted with discriminatory intent, and the claim for monetary damages under the ADA will therefore be dismissed.

## B. Count Two – Negligence

Under the Eleventh Amendment, "states are immune . . . from private suit in federal courts, absent their consent" for claims seeking money damages. *Greenless v. Almond*, 277 F.3d 601, 606 (1st Cir. 2002). That immunity extends to any entity that is an "arm of the state,"

---

[6] Plaintiff cites *Parker v. Universidad de Puerto Rico*, 225 F.3d 1 (1st Cir. 2000), as support for the contention that compensatory damages may be awarded under the ADA in this suit. However, counsel mischaracterizes *Parker*, in which the First Circuit explicitly noted that the defendant "failed to contest the availability of compensatory damages under Title II [of the ADA], either before the district court or on appeal." *Id.* at 8. Because the MBTA has invoked that defense here, *Parker* is inapposite.

including the MBTA.  *Wojcik v. Massachusetts State Lottery Comm'n*, 300 F.3d 92, 99 (1st Cir. 2002).

The Massachusetts Tort Claims Act operates as a limited waiver of Eleventh Amendment immunity.  Mass. Gen. Laws ch. 258.  The Tort Claims Act includes a discretionary-function exception that immunizes the state from "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer."  *Id.* § 10(b).  The Supreme Judicial Court has construed § 10(b) as requiring a two-part test:  (1) first, the court must determine whether the governmental actor had discretion on what course of action to follow, and (2) second, the court must consider whether the discretionary conduct involved policymaking or planning.  *Horta v. Sullivan*¸ 4 F.3d 2, 17 (1st Cir. 1993) (citing *Harry Stoller and Co. v. City of Lowell*, 412 Mass. 139, 141 (1992)).  Both elements must be met for the discretionary-function exception to apply.  *Id.*

In essence, plaintiff here contends that the discretionary-function exception does not apply because the MBTA's alleged negligent omissions, including the failure to warn and provide a means of communication with MBTA personnel, did not implicate any economic, political, social, or policy judgments.

However, the Court declines to resolve the question of whether under Massachusetts law the discretionary-function exception should apply.  A district court's original jurisdiction extends, among other things, to claims that arise "under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  If an action includes both federal-law claims and state-law claims, then the district court may exercise supplemental jurisdiction over the state-law claims.  28 U.S.C. § 1441(c).  However, where a plaintiff has failed to state a viable claim under federal law and jurisdiction over the remaining claims is based solely on supplemental jurisdiction, a

"district court has discretion to decline to exercise supplemental jurisdiction." *Uphoff Figueroa v. Alejandro*, 597 F.3d 423, 431 n.10 (1st Cir. 2010). In addition, the court "must take into account considerations of judicial economy, convenience, fairness to the litigants, and comity." *Delgado v. Pawtucket Police Dep't*, 668 F.3d 42, 48 (1st Cir. 2012); *see Wilber v. Curtis*, 872 F.3d 15, 23 (1st Cir. 2017) (noting that "it can be an abuse of discretion—if no federal claim remains—for a district court to retain jurisdiction over a pendent state law claim when that state law claim presents a substantial question of state law that is better addressed by the state courts".)

Here, plaintiff's claims under the ADA have been dismissed. In addition, this case is still in its early stages, and the state courts are well-equipped to address the state law issue of sovereign immunity. Accordingly, the Court sees no reason to exercise supplemental jurisdiction over the negligence claim in this matter, and Count 2 will therefore be dismissed.[7]

## IV.    Conclusion

For the foregoing reasons, defendant's motion to dismiss is GRANTED as to Count 1, and Count 2 is dismissed for lack of subject-matter jurisdiction.

**So Ordered.**

<br>

           /s/  F. Dennis Saylor
           F. Dennis Saylor IV
Dated: January 5, 2018           United States District Judge

---

[7] Plaintiff is advised that there is a three-year statute of limitations with respect to his negligence claim. His claim accrued on June 25, 2014, and the complaint was filed on June 15, 2017, when there were only 10 days left before the limitations period expired. It appears that 28 U.S.C. § 1367(d) tolled the limitations period during the pendency of this suit, and will continue tolling it for another 30 days after dismissal, unless state law provides for a longer tolling period. *See Alger v. Ganick, O'Brien & Sarin*, 35 F. Supp. 2d 148, 159 (D. Mass. 1999).